United States v. Gumbs Mr. Silas, come speak with us. Hold on one moment while we try to get everyone settled. Okay. May it please the Court. This Court should reverse the conviction against Shusta Gumbs because the legal instructions that were given to the jury were not sufficient to assure that the jury was properly guided in its deliberations. Mr. Gumbs requested two proposed instructions that went to elements of the offense, forcibly and use of a deadly or dangerous weapon. And except for one sentence, the Court did not give those instructions. Mr. Gumbs was hindered in his ability to present his defense of accident and lack of intent to direct force at the officers. That failing in the instructions leaves a doubt that cannot be destroyed or removed. I would like to address the errors with regards to the legal instructions that were given to the jury, including the Court's response to the jury's question and the failure to grant a lesser included offense instruction. Your argument has been that the jury might not have understood that the term forcibly applies to all means of committing a section 111 offense. And I don't see where the requested instruction does that any better than either the given instruction or what the pattern instruction would have been. Your Honor, I believe that the second sentence of our requested instruction does that where it says to forcibly assault, resist, oppose, impede or interfere with a Federal officer. So it's attaching forcibly to all of those means of violating the statute. They've been instructed that that's what the charge is, right? I mean, that language has been used elsewhere. That's before the jury, right? The jury was instructed that Mr. Gumbs was charged with forcibly assaulting, resisting, opposing, impeding, etc. However, I would argue to the Court that it's ambiguous that the term forcibly applies beyond assault. Yeah, but my point is just repeating the same language they've already heard as to what the charge is in the requested instruction. I don't see where that in any way further clarifies that the term forcibly applies to everything in the list. They've already been told that that's what the charge is. Well, Your Honor, I believe that the second clause of that sentence actually, of the sentence that I requested actually goes even further to clarify that where I say that taking all of those means to violate in any one of those ways. It doesn't say that. It says to forcibly assault, resist, oppose. That's the second sentence. It's just a repetition of what the charge is. But then I say, comma, the defendant must use or attempt to use physical force against the officer or threaten in some way to do bodily harm to the officer. So I am attaching my definition of forcibly to all of those means. And there is certainly legal support from a number of settings, including this court. Here's the given instruction. A forcible assault is an intentional threat or attempt to cause serious bodily injury when the ability to do so is apparent and immediate. I don't see where that's any less, you know, any materially different from what you asked be given. I think the difference is that I think it creates confusion even where you list the string of means along with the term forcibly in the charge or in the court's, in essence, recitation of the charge. But then when you actually define what forcibly is, you only use it in the context of assault, actually, which is an offense which is the one offense here that actually has an element of force that is inherent to the crime. In order to have an assault, one actually must attempt to use force or attempt to do bodily harm to another or threaten to do bodily harm in such a manner or under circumstances where the ability to do so is both immediate and apparent. Counsel, don't the normal rules of grammar indicate that an adverb modifies everything that follows it on a list? Isn't there a case law that says exactly that? There is. However… Including Arrington, which you rely on heavily. Yes, but what I do think is important about Arrington and the other cases that have said that, Judge, those cases have been under plain error review when the court has actually said that. Even in Arrington, the court actually said that the better practice would be to explicitly tell the jury that forcibly… Are jury instructions, is our standard review for jury instructions that they be metaphysically perfect or do courts have leeway in how they write these things that normal people would understand them? Yes, the court does have leeway, but… Well, do we want to write them how normal people understand them? You would agree with that? Well, yes, Judge. In Hightower, didn't we say with an identical instruction, almost the exact instruction here, quote, rather than elaborate on the terms used in the statute, the court… The court, in effect, simply read the statute as invoked in the indictment. As here, the instruction, excuse me, plainly worded, included the word forcibly and the requirement that the agent engaged in the performance of official duties. We think the language of the statute is understandable to the man on the street and needs no elaboration. I think the difference is that, there again, even in Hightower, the court was reviewing the charge under a plain error standard. There's no doubt about that, but it specifically said, even with plain error, that giving it is enough for understandable to the man on the street or the woman on the street and needs no elaboration. That's true, but the court is essentially saying that it would not be a miscarriage of justice because… All right, so your argument is that if it's not plain error review and we're just reviewing for harmless error, normal, ordinary review, that the ordinary rules of grammar don't apply in that context? No, what I am saying is that there are a number of cases that say that the better practice and the appropriate practice is for the district court to make explicit, to leave no doubt, to leave no confusion, that forcibly applies to every one of those charges. It goes back to Judge Luke's point about metaphysical perfection. I mean, that's not what the law requires. It requires that the jury be informed as to the law and that it covers all the essential bases. It doesn't have to be perfect, right? The court does have discretion, but my charge was one, Judge, that was a correct statement of the law. And I would argue to the court that it's not covered by the court's discretion. Let me ask you this. As I understand the defense, the defense was an intent issue. In other words, he intended to flee, not intended to hurt everybody, correct? Yes, Judge. Why would forcibly matter to that? How does that affect your defense if it went forcibly to this or that? Your issue is with the mens rea issue and whether intent should be applied to the use of deadly force element, right? Yes. That was the defense of trial. Why would this affect the defense even if we were to find that it required the metaphysical certainty that you're talking about? Because it was important for the jury to know that even for other means of violating the statute, such as to impede, resist, interfere with, et cetera, that there still had to be an intentional direction of force, and that ties in. But your argument wasn't that there wasn't some force here. There clearly was. He ran over a guy. The question you brought to the jury was, listen, he didn't intend to do this. He intended to flee, but he didn't intend to use this car as a deadly weapon here. That's completely divorced from the forcibly issue, is it not? Absolutely not. That's what the Arrington case says. In fact, in Arrington, the court actually said that it was unnecessary to attach an element of intent to the use of the vehicle as a dangerous or deadly weapon because the elements of forcible and use of a deadly weapon, they already captured that. So in essence, the court is saying that if you flee and you drive recklessly and injure someone, you are already protected under a proper construction of these terms because the element of forcible, which has an intent element, would not be satisfied. So taking all that and bringing that into this case, the defendant's reckless driving of his vehicle, which there may be certainly some support for that in the record of this case, it was important for the jury to be able to understand that his reckless driving and causing injury would not be enough for conviction. There still had to be an intentional direction of force at the officers. So that is why the instructions that we asked for on both forcibly and use of a dangerous or deadly weapon are important. And then when we get ultimately to— Well, in our request to charge regarding use of a deadly weapon, we ask that the jury explicitly be charged on the terminology in our second sentence, that the defendant must use it as a dangerous or deadly weapon and not simply as a mode of transportation. That is a statement that you see recurrently in the case law in this area, and it comes—it is a direct quote from the Arrington case. How is that not essentially a repetition or the inverse of the first sentence which was given? So the first sentence is, to be a deadly weapon, it has to be used as such, essentially. The car has to be used as that. And then the second sentence just is an inverse of that. If he doesn't use it as that, then it isn't a deadly weapon. Why do you need both? Why would the court not say, I'm giving the first one, and you can argue from that, which is exactly what happened? The first sentence that was actually given for my charge? Right. Wasn't it? Well, yes, it was given. Yes. Word for word. The difference is the sentence that the court actually took only really focuses on the capability of the vehicle. It simply says the court took the phrase, a motor vehicle is a dangerous or deadly weapon if it is used in a way capable. That's the same as the first sentence of your requested instruction. What I'm suggesting is that by lifting that one— You can't complain about that sentence, counsel, when you requested that sentence, too. I think it's fair to complain, Judge, if you take that one sentence and not the whole. Your point is not giving the next sentence was the problem, right? You can't complain about that sentence. You requested that sentence. I don't complain about that sentence. I complain about not giving the remainder of the charge. And Judge Luck's question is, how is that second sentence any different from the first? Because it's just the inverse. No, the second sentence actually carries with it a degree of intentionality associated with it. It says, basically, the defendant must use it as a dangerous or deadly weapon. So it is suggested that the defendant must affirmatively actually use it as a weapon and not simply as a mode of transportation. So that, I would argue to the court, helps to protect the defendant against the use of the vehicle in such a way that you accidentally cause harm to someone else. Okay. Thank you. Ms. Chaykin. I don't know if I pronounced your name correctly. It's fine. May it please the court, good morning. My name is Tal Chaykin, and I represent the United States. I didn't pronounce it right. The district court in this case properly instructed the jury that to convict Mr. Gumbs, it needed to find that Mr. Gumbs acted forcibly and that he used his motor vehicle as a dangerous or deadly weapon. And the district court's instructions properly allowed the jury to consider the defendant's defense of accident or mistake, not only because of the force and dangerous and deadly weapon instructions, but also because the court instructed the jury on the meaning of knowingly and willfully, which explicitly told the jury that knowingly and willfully means intentionally and not by accident or by mistake. I'd like to start by addressing the forcibly instruction and then move on to the dangerous or deadly weapon. As the court recognized earlier today, the language of the jury instruction tracked the language of the statute. It told the jury that Mr. Gumbs had to forcibly assault, resist, oppose, impede, etc. Do you know of any case where we have said that a jury instruction which tracks the language of the statute is itself erroneous? I have not seen a case like that, Your Honor. There are cases, as Mr. Gumbs' counsel indicated, that do address language that could be more explicit, language where the court instructs the jury, in order to convict the defendant, you must find that the defendant acted forcibly, or you must find that the defendant forcibly assaulted, forcibly resisted, forcibly opposed, etc. But the defendant in this case didn't request an instruction like that. The defendant instruction didn't add anything to the instruction that the court already gave. And an additional issue here is that the use of a deadly weapon instruction actually also substantially covered the force instruction that the defendant requested, because it wouldn't have been possible for the jury to convict Mr. Gumbs without finding that he used force. That is, the use of a motor vehicle in a way that was capable of causing death or serious bodily injury necessarily supplied more than the minimal amount of force that Section 111 requires. And in any event, the jury instructions didn't impair the defendant from asserting his defense because he didn't have a defense that there was no use of force. His defense, to the extent it relates to force at all, was that the force wasn't directed at anyone, which is really more of an intent requirement. And was also covered by the instruction that made clear that the force had to be towards an officer. That's the second element that the jury was instructed, where it was told that the person forcibly assaulted, resisted, impeded, etc. had to be a federal officer. Was the defendant precluded from making that intent defense? No, he made that defense extensively. In fact, the jury asked about it, right? They did. And the jury was re-instructed. I know there's an issue on that, but the jury was re-instructed and ultimately rendered a verdict in the case, right? Correct. How in any way does it meet the third element for reversible error in this standard where the defendant was impeded from raising the defense? It can't, Your Honor, because the defendant made that argument. He made the accident defense. And the jury instructions didn't preclude it in any way? The jury instructions facilitated that defense by telling the jury that if it was an accident or a mistake, they couldn't convict. That was one of the elements was that he acted knowingly and willfully. It just was not as specific or as good as it could have been. Is that fair? I think it was very clear, and courts across the country, including this court, have upheld jury instructions to that effect. But the fact that the defendant can conceive of language that could be more clear, which I don't think he actually requested in this case, but the fact that he can conceive of it doesn't mean that the jury instructions as given didn't properly guide the jury. As far as the use of a dangerous or deadly weapon, we've explained in our briefs why plain error review applies here. We'll rest on that. The only thing I would note is that all of the cases and the evidentiary rule that are cited in the defendant's reply brief apply to motions in limine, not jury instructions, which is governed by a different rule. And there was no objection made at any time during the second trial to the motor vehicle jury instruction. But in any event, regardless of the standard of review, there's no error here. And I think the best way to see that is to just look at the instructions themselves. The first sentence was given. The second sentence, as the court recognized, is entirely duplicative of the first. And to the extent that it is trying to impose a specific intent requirement, that's an intent requirement that doesn't exist in the statute. This court held in Edinger and the Supreme Court held in FIOLA that Section 111 doesn't have a specific intent requirement. It's a general intent crime. And so to the extent the defendant was trying to instruct the jury that he must have intended to use it as a deadly or dangerous weapon in order to injure or kill, that requirement doesn't exist. The third sentence was, to show that a weapon was used, the government must prove that it was actively employed in some way to further or advance the forcible assault, resistance, opposition, et cetera, with a federal officer. The concept of actively employed comes from firearm cases, distinguishing between possession of a firearm and actively employing it in some way. I think it's very confusing in the context of a motor vehicle. But it's also covered by the use instruction. Because if you are using a car, you're necessarily actively employing it in some way. If you're just sitting in your car, you're neither using it or actively employing it. So that sentence was sufficiently covered by the instructions. And the fourth sentence, use can occur through intentionally displaying a weapon during the course of forcibly assaulting, resisting, opposing, impeding. That's just wrong. Or interfering, almost seems inconsistent with the concept of use. Because you could be sitting in your car and be intentionally displaying it. And you wouldn't be using it in a way that is capable of causing death or serious bodily injury. You can see how that was taken from the firearm context. It just doesn't apply in this context. Right. So that was confusing as well. And then the final point that is not really in the instructions but is raised in the brief is that the jury instruction on use of a deadly weapon didn't adequately convey to the jury that there needed to be some offensive use of the vehicle. And, again, that's covered by the use instruction. If you are using a car in a way that's capable of causing death or serious bodily injury, you're necessarily using it in an offensive way. The general gist of all of these arguments is that Mr. Gumbs wanted to be able to argue to the jury that he didn't intend to use his car to kill anyone.  And part of, I think, the misunderstanding here in citing the case of Arrington is that when Arrington refers to using a vehicle purely for flight, it's not referring to the defendant's state of mind. It's referring to the action, the action of using the case purely for flight or using the vehicle purely for flight. And an example of that is the Sofin case that Mr. Gumbs cited in his reply brief from the Western District of Texas, which is a case where the defendant pulled up at a Border Patrol stop and was being asked questions by the agent. And then while the agent turned his head, the defendant drove away. That's an example where the action is just purely fleeing. That's not what happened in this case where Mr. Gumbs was surrounded by federal officers. They had blocked his exit from the parking lot. They were standing next to his car trying to open his door, and he decided to slam on the gas and pin Inspector Lemke against a car while fleeing from the parking lot. The fact that his end goal may have been to flee does not mean that he was using his vehicle purely for flight. And in any event, he still made that argument to the jury, even though it wasn't part of the instructions. And so this didn't impair his defense at all. He stood up and argued in closing to the jury that he didn't have any intent to use his car to harm anyone. And the last thing I would just add on that point is that as to the three officers who were furthest away from Mr. Gumbs, either behind him or near the exit of the parking lot, the jury acquitted, which shows that as to the people for whom it could arguably be said that he really did use his vehicle purely for flight, that he didn't direct force at them, that there was just forward movement of the Malibu as to those people, the jury thoughtfully applied the jury instructions and acquitted. And so it shows that the jury did understand those jury instructions and understood that they had to apply them individually as to Mr. Gumbs' intent and actions towards each officer. I don't believe that the issue of the jury's question or the lesser included offense came up in opening. So unless the court has any questions about those, we ask that Mr. Gumbs' conviction be affirmed. Thank you. Thank you. Mr. Silas, you have five minutes. Judge, the jury's question demonstrates that it did not— No, no, no, no, no. We didn't talk about that in opening. We're not talking about the jury's question. I indicated that I would like to address it. I didn't. You briefed it. It's before us, but you didn't address it in opening and the government didn't have an opportunity to respond to an argument you didn't make in opening. Okay. Your Honor, the court's instructions in this case, while it did use the term knowingly and willfully, the court's instructions never attached the term knowingly and willfully with regard to an actual direction of force at the officer. And that's what left the jury in the dark and left them confused about what was necessary for a conviction. So, you know, I analogize it this way. While I may have made the argument that Mr. Gumbs acted—that any contact with the officers was—there was only one officer contacted, that that contact was accidental and by mistake, it is like having a house without pillars. I can make the argument, but if I don't have the legal foundation in order to attach it to, my defense is undercut because the jury can't find in the instructions that what I'm arguing to them is really a viable defense. And that's really what my claim is in this case for Mr. Gumbs, that we didn't have the support in the law. And I would say, Your Honor, to the extent that the government actually touched upon— How does not the first instruction, the first element, the defendant knowingly and willfully, which are defined terms, forcibly assaulted, resisted, opposed, impeded, or interfered with the person described in the indictment and the person were the officers here? Doesn't that apply to knowingly and willfully to the force having—committing whatever act is prohibited with force against those people? Isn't that exactly what that instruction says? But if you don't clearly define what force actually means in this context, the jury is actually confused. They could be left with a misimpression that all force actually means in this context is force in the context of, in the laws of physics, acceleration of mass, movement of mass, as opposed to force being in the context of intentionally directing force at an officer. That was my argument. And they were never told that that had to be knowingly and intentionally done. But that goes back to Hightower, which seemed to suggest that everybody would know what force means. It's not that hard of a term or a concept. Right. You run it when they—again, I guess to reiterate what I'm saying— Let me ask you this. You're an experienced trial attorney. Jury instructions, as you know in these cases, can run dozens of pages sometimes. There are lots of words that we don't define because otherwise they would go on hundreds of pages, right? But I did ask for these terms. I know you've asked for them. But is the trial judge required and abused their discretion because they don't define every single term? I think it was an abuse of discretion in this context, given the nature of the defense that we had to actually leave those terms undefined actually did undercut our ability to effectively present any defense of lack of intent or accident. And with regard, if I may just briefly touch on the issue of where the plain error review actually applies here, Judge. May I do that? You're talking about as to the second instruction you were arguing about, the use of a deadly or dangerous weapon? Yes, Judge. And I would argue that we actually did effectively preserve that, Judge. And I think that when you look at the charge conference that actually occurred during the second trial of this case, which took place on December 7, 2017, docket entry number 156, basically the court actually goes through every one of the jury charges that the defense had already submitted. So the court was aware of those charges. The court addressed each one of those charges. And in each instance, the court said it was making the same ruling that it had made in the first trial. And in the earlier pretrial conference that had taken place on November 29, the court didn't say you have to refile your objections all over again. The court said if you want to file any amended or additional instructions to file those. And I rested upon the instructions that I already filed. And to underscore and to make clear that Judge Cohen actually was well aware of the fact that I wanted those instructions and that he was overruling my request for those, after the jury's question came back during the course of the trial, I asked again, Judge, now will you give my instruction? Because the instruction that I'm asking for goes to the question that the jury is actually asking. Judge Cohen says I've overruled your motion for that instruction, so you don't have to continue to make your instruction to my not giving that portion of your charge. I don't know why we have to keep going over that. So the court basically tells me you've already preserved that. Didn't the court say that the defendant filed a request to charge back in August in the original case? Yes. And I think my rulings are going to be exactly the same as they were at the first charge conference? Exactly, Judge. Okay. Thank you. Thank you, Mr. Salas. We have your case.